GREGORY W. STEVENS (USB # 7315)
Cottonwood Corporate Center
2825 East Cottonwood Parkway
Suite 500
Cottonwood Corporate Center
Salt Lake City, UT 84121-7060
Telephone: (801) 990-3388
Facsimile: (801) 606-7378
Email: utlaw@aol.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AARON L. SAMPSON,<br><br>*Plaintiff*,<br><br>v.<br><br>METRO LOGICS, INC.,<br><br>*Defendant*. | **COMPLAINT**<br>(JURY DEMANDED)<br><br>Case No. 2:12-cv-00718-BSJ<br><br>Judge Bruce S. Jenkins |

As and for this Complaint against Defendant Metro Logics, Inc. ("Metro Logics" or the "Defendant," Plaintiff Aaron L. Sampson ("Mr. Sampson" or the "Plaintiff"), by and through his undersigned counsel, alleges as follows:

**NATURE OF THE CASE**

1.  This civil action states a claim for damages to Mr. Sampson caused by Metro Logic's violation of (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"), for the Defendant's creation of a racially hostile work environment; (b) Title VII for the creation of a sexually hostile work environment; (c) Title VII for the termination of Mr. Sampson's employment by the Defendant based on his race; (d) the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") for the termination of Mr. Sampson's employment based on his race; (e) Title VII for the termination of his employment in retaliation for having voiced his opposition to practices made unlawful by Title VII; and (f) Section 1981 for the termination of his employment in retaliation for having voiced his opposition to practices made unlawful by Section 1981.

**JURISDICTION AND VENUE**

2.  This Court has original jurisdiction over this civil action based on the following provisions: (a) 28 U.S.C. § 1331, because this action arises under the laws of the United States; (b) 28 U.S.C. § 1343, because this action arises under laws of the United States providing for equal rights; and (c) 42 U.S.C. § 2000e-5(f), because this action arises under Title VII and Section1981.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant's place of business at which the cause of action arose is within the jurisdiction of this Court, a substantial part of the event or omissions giving rise to the claim set forth in this Complaint arose within the jurisdiction of this Court, and Defendant is subject to personal jurisdiction at the time of the

commencement of this action and there is no other district in which the action may otherwise be brought.

## PARTIES

4.  Plaintiff Aaron Sampson is, and at all times relevant to the allegations set forth in this Complaint has been, a citizen of the United States and resident of the State of Utah, residing in Murray, Utah.

5.  Defendant Metro Logics, upon information and belief, is, and during all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint was, a corporation that (a) has its principle executive offices located in Olive Branch, Mississippi, as a wholly-owned subsidiary of Esmark Corporation, a holding company, and has a facility located in Salt Lake City, Utah; (b) is a federal government contractor engaged in interstate commerce and, in particular, is a third-party medical logistics firm providing storage and distribution services to the medial equipment and pharmaceutical supply industries that include temperature-controlled facilities management, perishable product warehousing, bio-pharmaceutical and medical products storage and rapid-deployment logistics; (c) has a registered agent for services of process, CT Corporation System, located at 1108 East South Union Avenue, Midvale, UT 84047; (d) employed Mr. Sampson prior to his termination; and (e) now employs and, at the time of Mr. Sampson's termination, employed greater than 500 people.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Based on the events described in and giving rise to this Complaint, Mr. Sampson filed a timely charge with the Utah Anti-Discrimination and Labor Division ("UALD") and Equal

Employment Opportunity Commission ("EEOC"), stating claims of unlawful discrimination and retaliation in violation of Title VII.

7.  On or about May 21, 2012, following his request for a Notice of Right to Sue, Mr. Sampson received a proper Notice from the EEOC, signifying the exhaustion of his administrative remedies under Title VII as to his claims of discrimination and retaliation.

8.  A copy of the Notice of Right to Sue is included as an attachment to this Complaint as Addendum A, reflecting the satisfaction of the jurisdictional prerequisite to Mr. Sampson's claims under Title VII.

## EVENTS REQUIRING RELIEF

9.  Mr. Sampson was employed by Metro Logics as a Forklift Operator from January 24, 2011 through December 21, 2011; and was terminated from his employment by Metro Logics on December 22, 2011.

10.  The wrongful retaliatory employment practices described below, upon information and belief, were made and committed by agents and/or supervisory personnel of the Defendant with decision-making authority and the authority to alter Mr. Sampson's employment status, terms and conditions, with the full knowledge and authority of and/or ratification and acceptance by the Defendant.

11.  Defendant, as a federal government contractor that is required to comply with Executive Order 11246, which prohibits federal contractors and subcontractors that have contracts that exceed $10,000, from discriminating in employment decisions on the basis of race, color, religion, sex, or

national origin, has had and continues to have full knowledge of its obligations to comply with Executive Order 11246, Title VII and Section 1981.

12. The Defendant, directly and indirectly through its supervisory agents, thus engaged in the wrongful discriminatory and retaliatory employment practices described below with reckless indifference to the rights of Mr. Sampson.

13. The Defendant, directly and indirectly through its supervisory agents, also engaged in the wrongful discriminatory and retaliatory employment practices described below with malice and evil intent.

### *Defendant's Personnel*

14. Randy Lowman, who is Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics as its Chief Operations Manager in Salt Lake City, Utah and, as such, had responsibility for all of the Defendant's operations at its Salt Lake City warehouse; and had supervisory authority over Mr. Sampson, decision-making authority over his employment, and the authority to alter Mr. Sampson's employment status, terms, and conditions.

15. Charles (C.J.) Watkins, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics as its Shipping and Receiving Manager in Salt Lake City, Utah and, as such, had responsibility for logistics of all incoming and outgoing shipments of products at the Defendant's Salt Lake City warehouse; and had supervisory authority over Mr. Sampson, decision-making authority over his employment, and the authority to alter Mr. Sampson's employment status, terms, and conditions.

16. Mark Lambert, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics as its Maintenance Manager in Salt Lake City, Utah and, as such, was responsible for maintenance throughout the Defendant's Salt Lake City warehouse; and had supervisory authority over Mr. Sampson, decision-making authority over his employment, and the authority to alter Mr. Sampson's employment status, terms, and conditions.

17. Graeme [last name not known], who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics as its Assistant Maintenance Manager in Salt Lake City, Utah and, as such, was responsible for maintenance of forklifts and maintenance throughout the Defendant's Salt Lake City warehouse.

18. Dave Wheeler, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics in Salt Lake City, Utah as its Assistant Shipping and Receiving Manager at the Defendant's Salt Lake City warehouse and, as such, was responsible for logistics of incoming and outgoing shipments of product.

19. Tim Barrett, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics in Salt Lake City, Utah as a Forklift Operator at the Defendant's Salt Lake City warehouse; and, as such, was supervised by and reported to Mr. Watkins and Mr. Lowman.

20. Scott Cain, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics in its corporate Human Resources Department as the Director of Human Resources; and, as such, had the responsibility to investigate and address claims of harassment or discrimination based on race and gender and of unlawful retaliation.

21. Chris Robinson, who is also Caucasian, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics in Salt Lake City, Utah as a Forklift Operator at the Defendant's Salt Lake City warehouse; and, as such, reported to Mr. Watkins and Mr. Lowman.

22. Jerry Ortega, who is Latino, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, was employed by Metro Logics in Salt Lake City, Utah as a Forklift Operator at the Defendant's Salt Lake City warehouse and, as such, reported to Mr. Watkins and Mr. Lowman.

### *Racially Hostile Work Environment*
### *and Discriminatory Treatment Based on Race*

23. During his employment by Defendant, Mr. Sampson was subjected to an unwelcome racially hostile work environment by his supervisors and by his coworkers, including but not limited to racially derogatory comments and conduct, racially derogatory jokes, use of racial stereotypes, and discriminatory treatment of Mr. Sampson and other employees of Metro Logics and the CDC based on their race.

24. Mr. Sampson's workplace at Metro Logics, as a result of conduct that was accepted and approved by the Defendant's supervisory personnel and that started near the beginning of his employment with Metro Logics and continued until he was terminated, was permeated with racially discriminatory behavior that was sufficiently severe and pervasive to create an unwelcome racially hostile and abusive working environment.

25. On various occasions that occurred throughout the course of Mr. Sampson's employment, for example, Mr. Lowman would yell at Mr. Sampson, while on information and belief, did not yell at white workers; and, on one such occasion, explained to Mr. Sampson that "I yell at my dog; don't take it personal."

26. Also on various occasions that occurred throughout the course of Mr. Sampson's employment, for example, Chris Robinson, a coworker, repeatedly subjected Mr. Sampson directly to racially derogatory comments, including "don't leave any Black marks" as he walked into the rest room, "don't make me hang you from a tree", and "I'll drag you down the street behind my car".

27. On other occasions that also occurred throughout the course of Mr. Sampson's employment, also by way of example, Mr. Watkins referred to Mr. Sampson, directly to Mr. Sampson, as "Biscuit", "Home fries", "Chicken wing", "Crispy", and "Cotton."

28. On another occasion, Mr. Lowman told a racially derogatory joke concerning Latinos in the presence of Mr. Sampson and a Latino employee and other coworkers.

29. On another occasion, Mr. Watkins said in the presence of Mr. Sampson, when referring to a white woman, that "she's got kids by this fucking black dude who thinks he's all that. When we dropped her off, the mother fucker was walking around staring us down like he's some fucking

gang banger;" attempted to imitate how the man was walking and acting; and then said that "I'd kick his fucking ass in a heartbeat."

30.  On another occasion, Mr. Lowman yelled at a Latino representative from the CDC; Mr. Lowman later joked about the altercation with employees of Metro Logics and referred to the representative as a "fucking Mexican" and later joked with Mr. Watkins about the incident, who, in turn said that "Randy will kick his ass back across the border."

31.  Mr. Sampson repeatedly brought these comments, jokes and conduct to the attention of Metro Logic's managerial personnel in Salt Lake City, Utah and, in particular, to the attention of Mr. Lowman, Mr. Watkins and Mr. Lambert but they failed to take any prompt and remedial action, or any action at all.

32.  Mr. Sampson was also subjected to discriminatory treatment that included, by way of example, being subjected to video surveillance while performing his job, being subjected to a reprimand for being tardy on one occasion, being required to bring in a note from a physician for an absence, being subjected to disparate disciplinary action for his use of a forklift, being subjected to unwarranted disciplinary action for his use of a forklift, damaging a product and use of a box cutter, and being denied sick pay in keeping with the Defendant's policies and practices, when, upon information and belief, white employees were not subjected to such treatment.

33.  The racially hostile work environment had the purpose or effect on Mr. Sampson of unreasonably interfering with his work performance and of creating an intimidating, hostile, and offensive work environment that seriously affected his well-being.

34.  The racially hostile work environment would have caused a severe adverse affect on a reasonable person in Mr. Sampson's position who was subjected to the same conduct, and would have had the effect of unreasonably interfering with the individual's work performance and of creating an intimidating, hostile, or offensive working environment.

35.  The conduct at issue was offensive, threatening and humiliating; and was so severe or pervasive as to alter the conditions of Mr. Sampson's employment and create an abusive working environment.

36.  The discriminatorily abusive work environment created by the Defendant's actions seriously affected Mr. Sampson's psychological and emotional well-being.

### *Sexually Hostile Work Environment*

37.  During his employment by Defendant, Mr. Sampson was subjected to a sexually hostile work environment by his supervisors and by his coworkers, including but not limited to repeated use of sexually-charged profanity, references to genitalia, comments about two employees engaging in sexual intercourse, sexual innuendo and inappropriate touching.

38.  Mr. Sampson's workplace at Metro Logics, as a result of conduct that was accepted and approved by the Defendant's supervisory personnel and that started near the beginning of his employment with Metro Logics and continued until he was terminated, was permeated with unwelcome sexually hostile behavior that was sufficiently severe and pervasive to create a sexually hostile and abusive working environment.

39. Throughout the course of Mr. Sampson's employment, by way of example, Mr. Lowman and /or Mr. Watkins repeatedly used the words "dick," "fuck," "Cheeto dick," "pussy" and referred to women as "bitches" and "hos".

40. Also on various occasions, by way of example, Mr. Watkins repeatedly attempted to spread a rumor that a female employee of the Center for Disease Control ("CDC") as a lesbian.

41. On other occasions, Mr. Watkins made comments about a black man raping other men in prison.

42. On other occasions, Graeme repeatedly referred to the same employee pejoratively as a "he / she" and another employee of Metro Logics as "his ho."

43. Also throughout the course of Mr. Sampson's employment, and also by way of example, Mr. Sampson and other men were subjected to unwelcome physical conduct by Graeme, Mr. Watkins and Mark Lambert when they touched each other's nipples, fondled each other's genitals, and stood behind each other and other employees, appeared to mount them and made grunting noises.

44. Such conduct occurred at least every week and at times every day throughout the course of Mr. Sampson's employment with Metro Logics, either with direct sexually-suggestive physical contact with Mr. Sampson or with direct sexually-suggestive physical contact with other employees that Mr. Sampson witnessed.

45. Mr. Sampson repeatedly brought these comments and conduct to the attention of Metro Logic's managerial personnel in Salt Lake City, Utah and, in particular, to the attention of

Mr. Lowman, Mr. Watkins, and Mr. Lambert but they failed to take any prompt and remedial action, or any action at all.

46.   The sexually hostile work environment had the purpose or effect of unreasonably interfering with Mr. Sampson's work performance or creating an intimidating, hostile, or offensive working environment.

47.   The sexually hostile work environment would have caused a severe adverse affect on a reasonable person in Mr. Sampson's position who was subjected to the same conduct, and would have interfered with such a person's performance and created a hostile and offensive working environment.

48.   The conduct at issue was offensive, threatening and humiliating; and was so severe or pervasive as to alter the conditions of Mr. Sampson's employment and create an abusive working environment.

49.   The discriminatorily abusive work environment created by the Defendant's actions seriously affected Mr. Sampson's psychological and emotional well-being.

### *Discriminatory Termination Based on Race*

50.   The racially hostile work environment and discriminatory treatment of Mr. Sampson during his employment by Metro Logics show that Mr. Sampson's race was a motivating factor in the decision to terminate Mr. Sampson from his employment at Metro Logics.

51.   In light of the facts set forth above, it is clear that Mr. Sampson was treated differently than white employees of Metro Logics and subjected to disparate treatment based on his race when he was terminated from his employment by Metro Logics.

*Retaliatory Termination*

52. Mr. Sampson repeatedly voiced his opposition to the racially hostile work environment, discriminatory treatment but neither Defendant's managerial personnel nor its HR Department took corrective action in a good faith effort to resolve Mr. Sampson's concerns.

53. Mr. Sampson, for example, complained to Mr. Lowman, Mr. Watkins, and Mr. Lambert concerning his opposition to what he reasonably and in good faith saw as a racially hostile work environment, sexually hostile work environment and discrimination against him based on his race; but the Defendant's managerial personnel failed to take prompt remedial action.

54. Instead, in retaliation for Mr. Sampson's having thus voiced his opposition to such conduct and in an effort to intimidate Mr. Sampson, Mr. Lowman and Mr. Watkins required Mr. Sampson to take days off from work.

55. Also in retaliation for Mr. Sampson's having thus voiced his opposition to such conduct, also threatened Mr. Sampson with termination, stating on one occasion, for example, that he had the ability to monitor his work and performance through video surveillance through his computer.

56. As a result of the failure of the Defendant's managerial personnel to address Mr. Sampson's concerns, Mr. Sampson sought the assistance of the Defendant's Human Resources Department; and, as a result, Mr. Cain, Director of the Defendant's Human Resources Department, responded to Mr. Sampson's concerns but, in so doing, failed to take prompt remedial action.

57. On December 21, 2011, Mr. Cain informed Mr. Sampson that his allegations concerning a hostile work environment had merit and that the facts supported the conclusion that such an

environment had been created; but also concluded that Mr. Sampson's allegations of discrimination did not have sufficient factual support to reach the same conclusion.

58.  In response to Mr. Cain's conclusions, Mr. Sampson indicated that he wished to pursue the matter outside of the company but, in response to that statement, Mr. Cain said that "that's not going to happen."

59. On December 22, 2011, the following day, Metro Logics terminated Mr. Sampson from his employment, stating explicitly that it was doing so because of Mr. Sampson's prior complaints concerning his treatment by and the working conditions created at Metro Logics.

60.  In light of the facts set forth above, it is clear that the fact that Mr. Sampson voiced opposition to conduct and statements that he reasonably and in good faith believed are made unlawful by Title VII and Section 1981 was a motivating factor in the decision to terminate Mr. Sampson from his employment at Metro Logics.

### *Mr. Sampson's Injuries and Losses*

61.  As a direct and proximate result of the wrongful termination described in the foregoing paragraphs of this Complaint, Mr. Sampson has suffered and will continue to suffer lost salary and employment benefits.

62.  Mr. Sampson, without limiting his calculation of the economic damages that he suffered as they may be more fully addressed by an expert witness, states that he earned approximately $42,357.52 per year while employed by Defendant; that he has been unemployed and unable to find comparable employment during the period from December 22, 2011 to the present; and that he lost benefits, including but not limited to health insurance and dental coverage, equal to approximately

16% of his salary; that, as a result, he lost a total of approximately $28,661.92 in compensation and benefits during that seven-month period; and that, because he remains unemployed in spite of his best efforts to obtain employment, such damages for lost compensation and benefits are continuing to accrue.

63. As a further direct and proximate result of the wrongful termination described in the foregoing paragraphs of this Complaint, Mr. Sampson has also suffered nonpecuniary injury, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and humiliation.

**CLAIMS FOR RELIEF**
**COUNT I**
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Racially Hostile Work Environment)**

64. The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

65. By virtue of the activities described in the foregoing paragraphs of this Complaint, Metro Logics intentionally discriminated against Mr. Sampson because of his race by creating a racially hostile work environment; and, by reason of such unlawful conduct, violated Title VII.

66. The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson, failed to exercise reasonable care to prevent and promptly correct any racially hostile behavior, failed to make a good faith effort to comply with anti-discrimination laws, and ratified and approved of such racially hostile conduct.

67. As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has suffered compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

68. The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $90,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

### COUNT II
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Sexually Hostile Work Environment)**

69. The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

70. By virtue of the activities described in the foregoing paragraphs of this Complaint, Metro Logics intentionally discriminated against Mr. Sampson because of his gender by creating a sexually hostile work environment; and, by reason of such unlawful conduct, violated Title VII.

71. The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson, failed to exercise reasonable care to prevent and promptly correct any

sexually hostile behavior, failed to make a good faith effort to comply with anti-discrimination laws, and ratified and approved of such sexually hostile conduct.

72.  As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has suffered compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

73.  The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $90,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

**COUNT III**
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Discriminatory Termination Based on Race)**

74.  The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

75.  The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson and the termination of his employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to

comply with anti-discrimination laws, and ratified and approved of Mr. Sampson's discriminatory termination.

76. As described in the foregoing paragraphs of this Complaint, the Defendant engaged in discriminatory conduct by taking adverse action against him while he was employed by the Defendant and by terminating him from his employment with the Defendant.

77. By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally discriminated against Mr. Sampson because of his race and, by reason of such discriminatory conduct, violated Title VII.

78. As a direct and proximate consequence of these violations by the Defendant, Mr. Sampson has been damaged and will continue to be damaged, and Defendant is liable, for his lost salary and employment benefits, in an amount not yet fully ascertained but at least equal to approximately $28,661, which shall continue to accrue while Mr. Sampson remains unemployed, plus prejudgment interest thereon.

79. As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

80. The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as

a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $180,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

**COUNT IV**
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Retaliatory Termination)**

81.   The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

82.   The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson and the termination of Mr. Sampson's employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and ratified and approved of Mr. Sampson's retaliatory termination.

83.   By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally retaliated against Mr. Sampson by terminating his employment with Metro Logics because he opposed what he reasonably and in good faith believed to be a violation of Title VII; and, by reason of such retaliatory conduct, the Defendant violated Title VII, amended.

84.   As a direct and proximate consequence of these violations by the Defendant, Mr. Sampson has been damaged and will continue to be damaged, and Defendant is liable, for his lost salary and employment benefits, in an amount not yet fully ascertained but at least equal to

approximately $28,661, which shall continue to accrue while Mr. Sampson remains unemployed, plus prejudgment interest thereon.

85. As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

86. The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $180,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

**COUNT V**
**Civil Rights Act of 1866,**
**42 U.S.C. § 1981, as amended**
**(Discriminatory Termination Based on Race)**

87. The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

88. The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson and the termination of his employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to

comply with anti-discrimination laws, and ratified and approved of Mr. Sampson's discriminatory termination.

89. As described in the foregoing paragraphs of this Complaint, the Defendant engaged in discriminatory conduct by taking adverse action against him while he was employed by the Defendant and by terminating him from his employment with the Defendant.

90. By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally discriminated against Mr. Sampson because of his race and, by reason of such discriminatory conduct, violated Section 1981.

91. As a direct and proximate consequence of these violations by the Defendant, Mr. Sampson has been damaged and will continue to be damaged, and Defendant is liable, for his lost salary and employment benefits, in an amount not yet fully ascertained but at least equal to approximately $28,661, which shall continue to accrue while Mr. Sampson remains unemployed, plus prejudgment interest thereon.

92. As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

93. The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as

a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $180,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

**COUNT VI**
**Civil Rights Act of 1866,**
**42 U.S.C. § 1981, as amended**
**(Retaliatory Termination)**

94. The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

95. The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Mr. Sampson and the termination of Mr. Sampson's employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and ratified and approved of Mr. Sampson's retaliatory termination.

96. By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally retaliated against Mr. Sampson by terminating his employment with Metro Logics because he opposed what he reasonably and in good faith believed to be a violation of Section 1981; and, by reason of such retaliatory conduct, the Defendant violated Section 1981, amended, as the United States Supreme Court stated in *CBOCS West Inc. v. Humphries*,__ U.S. __, 128 S. Ct 1951, 1958-60 (2008), constitutes a cognizable claim.

97. As a direct and proximate consequence of these violations by the Defendant, Mr. Sampson has been damaged and will continue to be damaged, and Defendant is liable, for his

lost salary and employment benefits, in an amount not yet fully ascertained but at least equal to approximately $28,661, which shall continue to accrue while Mr. Sampson remains unemployed, plus prejudgment interest thereon.

98.    As a direct and proximate consequence of the foregoing violations by the Defendant, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained but at least equal to approximately $30,000, plus prejudgment interest thereon.

99.    The Defendant, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, the Defendant is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, but at least equal to $180,000, an amount equal to three times' actual damages for lost compensation and compensatory damages not including lost compensation.

## REQUEST FOR RELIEF

100.    WHEREFORE, Mr. Sampson respectfully demands judgment awarding him the following:

(a) on Count I, judgment that Metro Logics violated Title VII by creating a racially hostile work environment and that Mr. Sampson is entitled to damages from the Defendant for compensatory damages as defined by Title VII, as amended, for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as specifically set forth

above; and punitive damages to punish and deter this Defendant and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, plus prejudgment interest;

(b) on Count II, judgment that Metro Logics violated Title VII by creating a sexually hostile work environment and that Mr. Sampson is entitled to damages from the Defendant for compensatory damages as defined by Title VII, as amended, for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as specifically set forth above, plus prejudgment interest thereon; and punitive damages to punish and deter this Defendant and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, plus prejudgment interest;

(c) on Count III, judgment that Mr. Sampson was subjected to a discriminatory termination by Metro Logics in violation of Title VII and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as specifically set forth above; and punitive damages to punish and deter Metro Logics and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, as more fully set forth above;

(d) on Count IV, judgment that Mr. Sampson was subjected to a retaliatory termination by Metro Logics in violation of Title VII, and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as more specifically set

forth above; and punitive damages to punish and deter Metro Logics and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, as more fully set forth above;

(e) on Count V, judgment that Mr. Sampson was subjected to a discriminatory termination by Metro Logics in violation of Section 1981, and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as more specifically set forth above; and punitive damages to punish and deter Metro Logics and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, as more fully set forth above;

(f) on Count VI, judgment that Mr. Sampson was subjected to a retaliatory termination by Metro Logics in violation of Section 1981, and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial as more specifically set forth above; and punitive damages to punish and deter Metro Logics and others from engaging in the same unlawful conduct, in an amount to be determined at trial, of at least three times actual damages, as more fully set forth above;

(g) on Counts I through VI, judgment awarding Mr. Sampson his attorney's fees, at prevailing market rates, based on Metro Logics's violation of Title VII and Section 1981;

(h) prejudgment interest accrued between the date of the jury's verdict and final judgment, and post-judgment interest accrued between the date of final judgment and the full and complete satisfaction of the judgment; and

(i) such other and further relief as the Court may deem appropriate, including but not limited to reinstatement or front pay, and such other relief as is necessary to effectuate the purposes of Title VII and Section 1981.

## JURY TRIAL DEMAND

101. Mr. Sampson demands a trial by jury on each of the claims set forth above in this Complaint.

Respectfully submitted this 23rd day of July 2012:

*/s/ Gregory W. Stevens*
Gregory W. Stevens
*Attorney for Plaintiff*